[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Motion For Order In Aid of Judgment [147]
This matter is before the court again; the aftermath of this court's decisions and judgment (Austin, J.) in favor of the plaintiff. The judgment was affirmed on appeal. Gebbie v. CadleCo., 49 Conn. App. 265 (June 30, 1998).
Basically, this is an action for specific performance of a contract. Gebbie had two loans from a bank which failed. The loan amounts were $280,000 and 320,000. The bank held a note and mortgage for each loan. A separate Gebbie property secured each loan. The Federal Deposit Insurance Corporation (FDIC) became the receiver for the failed bank. The FDIC sold the two Gebbie notes and mortgages to ALI, Inc. (ALI).
ALI and Gebbie agreed to restructure Gebbie's debt. They agreed Gebbie would pay $40,000 upon the closing, $4,000 of which CT Page 12315 was to be paid within two days as a non-refundable deposit. The $4,000 was paid by Gebbie and accepted by ALI. The debt which was in the order of $600,000 was to be reduced to $160,000. The "$160,000 [was] payable over a ten year term with a thirty year amortization at a stated rate of interest; (2) the total obligations were to be canceled if Gebbie fully complied with the repayment terms; and (3) in the event of default, the full balance would be reinstated. The effect of this agreement was to consolidate the two notes and mortgage obligations and, in consideration of a payment of $40,000, to restructure the agreement. The letter agreement called for acceptance in the form of a $4,000 deposit. This deposit was tendered by Gebbie and accepted by ALI." Gebbie v. Cadle Co., 49 Conn. App. 265, 269
(June 30, 1998).
ALI subsequently sold the Gebbie obligation(s) to Cadle for $151,410. Gebbie brought this action to enforce the mortgage modification agreement. This court held that Gebbie had a binding agreement with ALI for the debt restructuring. It further held that Cadle was bound by ALI's agreement with Gebbie. It was held Gebbie was entitled to specific performance by Cadle. The Appellate Court affirmed.
Upon execution of the mortgage modification, Gebbie was to pay Cadle $36,000.
The court also awarded Gebbie $13,781.25 for attorney's fees which were to be paid by Cadle. This award was affirmed by the Appellate Court. 49 Conn. App. @ 278-280.
The parties are at odds regarding plaintiff's compliance with the judgment. Defendant Cadle disputes plaintiff's deducting $13,781.25, the amount of the attorney's fee award, from the $36,000 payment plaintiff was to make to Cadle upon execution of the mortgage modification.
The original judgment of the trial court is dated October 29, 1996. It provided in part:
 "Whereupon, it is adjudged that Judgment in favor of the Plaintiff, Darwin C. Gebbie and ordering that The Cadle Company submit to Darwin C. Gebbie a Mortgage Modification Agreement and awarding the Plaintiff attorney's fees in the amount of $13,781.25." Judgment file, October 29, 1998, p. 3.
CT Page 12316
The court's August 29, 1996 memorandum of decision sheds light on the judgment.
 "The court directs and orders that The Cadle Company submit to the plaintiff a mortgage modification agreement consistent with the terms of the March 14, 1995 letter and that said mortgage modification agreement be provided within 30 days of the date of this judgment. The mortgage modification agreement shall be finalized and executed within 10 days after receipt of the same and thereafter promptly recorded upon the land records.
 "The court finds that the defendant Cadle Company has violated CUTPA and awards attorneys fees in the amount of $11,281.25 . . ." Memorandum of Decision, August 29, 1996, p. 22. [134]
The attorney's fee award later was increased by $2,500. See Memorandum of Decision On Motion To Reargue And Motion For Additional Attorneys Fees, October 29, 1996, p. 2. [140]
The appeal effectively placed the judgment on hold. The appeal was decided on June 30, 1998. Gebbie v. Cadle Co.,49 Conn. App. 265 (June 30, 1998).
Both parties have treated the date of the Appellate Court's decision as supplanting the date of the trial court judgment. Thus, the thirty-day period for Cadle to submit the mortgage modification agreement to the plaintiff began on June 30, 1998.
No time for payment of the $13,781.25 attorney's fee award was stated in either the memoranda of decision or the judgment.
On July 1, 1998, Gebbie's counsel sent a letter to Cadle's counsel enclosing a proposed mortgage modification. In the letter, Gebbie offered to pay Cadle $22,218.75; the amount of the $36,000 payment due with the mortgage modification less the amount of the attorney's fee award of $13,781.25. The record does not show that Cadle ever responded to this payment proposal.
The record is not clear when Cadle sent Gebbie a mortgage modification as required by the judgment. There is no indication it was not sent within the required 30 days. Since plaintiff has CT Page 12317 not made any claim that Cadle did not send a mortgage modification within the required 30 days, the court assumes one was sent to Gebbie within 30 days after June 30, 1998, the date of the Appellate Court's affirmance of the trial court's actions.
The record does contain a letter from Cadle's counsel to Gebbie, c/o Gebbie's counsel. It includes the following:
 "On August 3, 1998, your counsel forwarded an executed Renewal Note and an executed copy of the Modification Agreement provided by The Cadle Company with certain portions deleted and initialed by you, as well as a check in the amount of $22,218.75.
 "This letter is to notify you that you are in default of the court order because of your failure to tender the sum of $36,00.00 within the time period set forth in the court's orders. In addition, your failure to execute the Modification Agreement we provided to you is another event of default. The provisions you deleted were consistent with normal commercial practices for loan workouts and are not inconsistent with the court's order." Letter, August 11, 1998, Jacobs, Walker, Rice Basche, P.C. (counsel for Cadle), to Darwin C. Gebbie, c/o O'Brien, Shafner, Stuart, Kelly, Morris, P.C. (counsel for Gebbie).
The court accepts as true that Gebbie only sent $22,218.75 to Cadle on August 3, 1998. The court also accepts as true that Gebbie executed a modification agreement provided by Cadle but only after Gebbie had deleted certain parts and initialed his deletions.
The record does not show whether Cadle retained the $22,218.75 Gebbie sent to Cadle on August 3, 1998.
Cadle's lawyers' letter went on —
 "As a consequence of your default, the entire principal balance under the Notes is now due and owing. The principal balance due on the $280,000.00 Note is $267,711.11 and the principal balance due on the $320,000.00 Note is $319,893.28. The above amounts must be paid on or before September 10, 1998. Your payment should be forwarded directly to The Cadle CT Page 12318 Company, 100 North Center Street, Newton Falls, OH 44444. If payment in full is not made on or before September 11, 1998, The Cadle Company will seek legal means to collect the balance due." Letter, August 11, 1998, Jacobs, Walker, Rice Basche, P.C. (counsel for Cadle), to Darwin C. Gebbie, c/o O'Brien, Shafner, Stuart, Kelly, Morris, P.C. (counsel for Gebbie).
Cadle claims that (1) Gebbie's tender of only $22,218.75 (rather than $36,000) and (2) Gebbie's not executing the modification agreement Cadle tendered without any changes are both events of default.
Gebbie's counsel had long held $36,000 for the payment. See Memorandum of Decision On Motion To Reargue And Motion For Additional Attorneys Fees, October 29, 1996, p. 1. [140] The $36,000 was to be paid at the time of Gebbie's execution of the mortgage modification; neither party contends otherwise. The judgment also required Cadle to pay Gebbie $13,781.25. No time for payment of the $13,781.25 was specified. The memoranda of decision and the judgment are silent on whether the Gebbie could or could not credit the $13,781.25 attorney's fee award against the $36,000 payment.
Basically, this action is one for specific performance. It is an action in equity. As such, the use of common sense and practicality are not precluded.
Cadle states that Gebbie is in default because —
 "1. To the extent that the Motion seeks an Order allowing an offset of attorney's fees owed by the Defendant against the debt owed by the Plaintiff, the Defendant points out that Judge Austin authored two decisions in this case, both of which involved awarding attorney's fees to the Plaintiff. In neither decision did Judge Austin indicate that an offset would be appropriate. Had Judge Austin felt that offset was appropriate, he certainly would have included such a provision in his Memoranda of Decision."
 "2. The funds against which the Plaintiff seeks an offset the attorney's fees are funds that Plaintiff's counsel has been holding in escrow pending the outcome of the appeal. There is no basis for the CT Page 12319 Plaintiff to offset against funds which are the Defendant's which are simply being held by plaintiff's counsel." Defendant's Objection To Plaintiff's Motion For Order In Aid of Judgment, September 1, 1998, pp. 1-2.
Defendant cites no authority other than Judge Austin's not mentioning an offset. The record does not indicate that the parties had indicated to Judge Austin that this was, or might be, an issue. Defendant's contention that Judge Austin's not mentioning offset is a slim reed on which to base a decision with such high consequences — reinstatement of the $600,000 + or — balance and immediate payment thereof — as those contained in the August 11, 1998 letter to Gebbie from counsel for Cadle. Letter, August 11, 1998, Jacobs, Walker, Rice Basche, P.C. (counsel for Cadle), to Darwin C. Gebbie, c/o O'Brien, Shafner, Stuart, Kelly, Morris, P.C. (counsel for Gebbie).
A look at the practicalities suggests that the defendant's position is flawed.
Nothing in the record indicates Cadle had ever indicated if or when Cadle would pay its $13,781.25 obligation to Gebbie.
Obviously, as of August 3, 1998, the date Gebbie sent $22,281,25 to Cadle, Cadle had not paid Gebbie the $13,781.25. Since Cadle has not claimed Gebbie's August 3, 1998 payment was tardy, but rather only deficient in amount, the court assumes that Gebbie's payment was timely.
The question is: When was Cadle required to the $13,781.25 to Gebbie? As is shown below, Cadle, as a matter of law, was obligated to pay the $13,781.25 long before August 3, 1998.
As of October 29, 1996, Gebbie had a judgment requiring that Cadle pay him $13,781.25. [Actually he had a judgment for $11,281.25 as of August 29, 1996.] The October 29, 1996 judgment required Cadle to pay Gebbie $13,781.25 as of that date, i.e., October 29, 1996. By virtue of Cadle's appeal, Gebbie could not take any action to enforce the judgment. P.B. § 4046 [now § 61-11]. The appeal did not extinguish the obligation, the appeal only stayed enforcement of the judgment. The appeal was decided in favor of plaintiff on June 30, 1998.
On June 30, 1998, Gebbie had an enforceable judgment against Cadle for $13,781.25. On the 11th date after the June 30, 1998 CT Page 12320 affirmance by the Appellate Court, Gebbie could have obtained an execution against Cadle for, at the very least, $13,781.25. See P.B. § 61-11.
The statutes provide: "`Money judgment" means a judgment, order or decree of the court calling in whole or in part for the payment of a sum of money . . ." C.G.S. § 52-350a(13). The $13,781.25 award for attorney's fees was a "money judgment." C.G.S. § 52-350a(13). Regarding a "money judgment," the statutes provide:
 "A money judgment may be enforced against any property of the judgment debtor . . . The money judgment may be enforced, by execution to the amount of the money judgment with (1) all statutory costs and fees as provided by the general statutes, (2) interest as provided by chapter 663 [763] on the money judgment and on the costs incurred in obtaining the judgment, and (3) any attorney's fees allowed pursuant to section 52-400c." C.G.S. § 52-350f.
According to the August 11, 1998 letter to Gebbie from Cadle's counsel, Gebbie sent Cadle $22,231.25 on August 3, 1998. As of that date, August 3, 1998, Gebbie was entitled to far more than $13,781.25, the amount of the money judgment in favor of Gebbie. Gebbie was entitled to interest at the rate of ten per cent per year. C.G.S. § 37-3a. Interest ran from the date of the original judgment, October 29, 1996, to August 3, 1998, the date of Gebbie's deducting the $13,781.25 from the $36,000 payment to Cadle. This was 643 days. As of August 3, 1998, Cadle owed Gebbie at least $2,427.71 interest on the money judgment. [$13,781.25 x 643/365 x 10% = $2,427.71. The amount due on August 3, 1998 on the money judgment alone was $16,208.96. [$13,781.25 + $2,427 = $16,208.96]
But that does not give the complete picture. Gebbie could have executed on the judgment which as of August 3, 1998 entitled Gebbie to $16,208.96. The court clerk would charge $10 for the execution. C.G.S. § 52-356a(1). Cadle would be liable for this charge ultimately. The officer executing the execution was entitled to a fee to be paid by Cadle —
 "for levying an execution, when the money is actually collected and paid over, or the debt secured by the officer to the acceptance of the creditor, ten per cent CT Page 12321 on the amount of the execution." C.G.S. § 52-261(6).
The fee due the executing officer would be $1,620.89. Cadle would be liable for this fee. [$16,208.96 x 10% = $1,620.89]
As of August 3, 1998, had Gebbie decided to execute on the judgment due him, it could have cost Cadle $17,839.86. [$13,781.25 attorneys fee award) + $2,427.71 (statutory interest) + $10 (clerk's fee for issuing execution, C.G.S. § 52-361a(1)) + $1,620.89 (execution fee per C.G.S. § 52-261(6)) = $17,839.86] By Gebbie's offsetting the $36,000 due Cadle by the amount of the attorney's fee award of only $13,781.25, Cadle was saved over $4,000. [$17,839.85 — $13,781.25 = $4,058.60]
Cadle has claimed the $36,000 was a "debt owed by the Plaintiff" and were "funds which are the Defendant's." Defendant's Objection To Plaintiff's Motion For Order In Aid Of Judgment, September 1, 1998, pp. 1-2. These are judicial admissions.
"A money judgment may be enforced against any property of the judgment debtor." C.G.S. § 52-350f. "`Property' means any real or personal property in which the judgment debtor has an interest which he could assign or transfer, including (A) any present or future right or interest, whether or not vested or liquidated, (B) any debt, whether due or to become due, and (C) any cause of action which could be assigned or transferred." C.G.S. § 52-350a(16).
Since Cadle has admitted the $36,000 was a "debt owed by the Plaintiff" and "funds which are the Defendant's, the $36,000 was subject to execution.
As a practical matter, Gebbie could have obtained an execution from the clerk of the court located at One Courthouse Square, Norwich, Connecticut, and had the executing officer walk less than 100 feet across the street to the offices of Gebbie's counsel at 138 Main Street, Norwich, Connecticut, and there levy the execution. As indicated above, the execution would require a payment to the officer of $17,829.86, $4,058.60 more than Gebbie deducted from the $36,000.
Gebbie was entitled to an execution as of July 11, 1998. Therefore, Cadle, as a matter of law was obligated to pay the $13,781,25 as of that date, i.e., well before August 3, 1998. CT Page 12322
The court concludes that Gebbie was well within his rights to effect the offset. And, Cadle cannot legitimately bemoan Gebbie's electing to effect the offset which saved Cadle $4,058.60.
The court holds that Gebbie could offset the amount of the $13,781.25 attorney's fee judgment against the $36,000. It is the holding of the court that the tender of $22,218.75 did not trigger a default.
Cadle apparently tendered a proposed mortgage modification to Gebbie. Gebbie changed it by deleting certain provisions. Gebbie executed it as so changed. Gebbie returned the mortgage modification agreement as changed to Cadle with a check for $22,218.75. The court does not know if the mortgage modification has been recorded by Cadle.
Neither the mortgage modification as provided by Cadle or the version signed by Gebbie is before the court. Therefore, the court is in no position to determine whether Gebbie's deletions were so substantial as to constitute a default.
Cadle's counsel have stated that Gebbie's changes to the modification agreement were "minor." See Defendant's Objection to Plaintiff's Motion For Order In Aid Of Judgment, September 1, 1998. Such a statement made in a document filed with the court by able and responsible counsel is not taken lightly.
This characterization of the changes as "minor" is a judicial admission. This is an equitable action. Cadle has threatened "to seek legal means to collect the balance due," which Cadle claims is $267,711.11 plus $319,893.28, i.e. $587,604.39. Letter, August 11, 1998, Jacobs, Walker, Rice Basche, P.C. (counsel for Cadle), to Darwin C. Gebbie, c/o O'Brien, Shafner, Stuart, Kelly, Morris, P.C. (counsel for Gebbie). Any such "legal means" would also be an equitable action. Cadle paid only $151,410 for these loans on May 5, 1995. 49 Conn. App. @ 269, 271. Cadle now seeks to be paid approximately $600,000 in addition to the $36,000 it has received (or at least been credited.)
The court cannot imagine any court of equity holding either one of or both of the events of default as claimed by Cadle sufficient cause to abort the mortgage modification and CT Page 12323 reinstating the original indebtedness of close to $600,000 and immediately accelerating payment of the $600,000.
Recognizing and accepting Cadle's characterization of the changes to the mortgage modification made by Gebbie as "minor," he court urges the parties and their counsel to make a concerted good faith effort to resolve their differences and implement the judgment without further costly, unnecessary, and wasteful skirmishing.
Parker J.